UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

DONALD ALFRED HOLDEN,

                Plaintiff,                      Case No. 1:12-cv-284

v.                                                       Honorable Robert J. Jonker

MICHIGAN DEPARTMENT OF
CORRECTIONS et al.,

                Defendants.
_____/

## OPINION

        This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*, and Plaintiff has paid the initial partial filing fee. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, Plaintiff's action will be dismissed for failure to state a claim.

**Factual Allegations**

Plaintiff Donald Alfred Holden is a prisoner incarcerated with the Michigan Department of Corrections (MDOC) at the Bellamy Creek Correctional Facility (MSP). He sues the MDOC and the following employees of MSP: Assistant Resident Unit Supervisor (ARUS) B. Rozen, Warden Kenneth McKee, Assistant Deputy Wardens (ADW) S. Young and C. Stoddard, and Resident Unit Manager (RUM) C. Hull.

According to the complaint, Plaintiff was classified to administrative segregation in November 2011 "for supposedly having sex with a prisoner." (Compl. 3, docket #1.) Plaintiff alleges that ARUS Rozen knew that Plaintiff is HIV positive, and disclosed Plaintiff's "medical status" on a "public form," the CSJ-283.[1] (*Id.*) Rozen also "went as far as to have the school teacher pass out the [form]." (*Id.*) Warden McKee and ADW Young signed the form and they, along with ADW Stoddard, neglected to have Plaintiff's health status removed from the form. Plaintiff filed a grievance about the issue and RUM Hull also neglected to have the information removed. Plaintiff contends that each of the Defendants has the authority to remove Plaintiff's medical information from the form.

Plaintiff asserts that the disclosure of his medical information has caused him humiliation, mental distress, pain, suffering and depression. He contends that it is a violation of his constitutional rights to have his "health status" or "any mention of [his] medical illness" on that

---

[1]The CSJ-283 is the Segregation Behavior Review form. *See* MDOC Policy Directive 04.05.120 ¶ DDD (effective 09/27/2010). According to MDOC policy, the form is used by a prison staff to document the "behavioral adjustment" of prisoners assigned to administrative segregation, including those who have been assigned due to a misconduct. *See id.* at ¶¶ BBB-GGG.

form. (*Id.*) He seeks monetary damages and requests that the medical information be removed from the form and that his health status remain confidential within the medical department of the MDOC.

## Discussion

I.   Failure to state a claim

A complaint may be dismissed for failure to state a claim if "'it fails to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 129 S. Ct. at 1950 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

Plaintiff claims that Defendants disclosed his personal information in violation of his constitutional rights, which the Court construes as a Fourteenth Amendment claim.

> Two types of interests have been identified by the Supreme Court as protected by the right to privacy that is rooted in the substantive due process protections of the Fourteenth Amendment. One is the interest in "independence in making certain kinds of important decisions." *Whalen v. Roe*, 429 U.S. 589, 599-600 & n.26 (1977) (noting that these decisions have been characterized as dealing with "matters relating to procreation, marriage, contraception, family relationships, and child rearing and education" (quoting *Paul v. Davis*, 424 U.S. 693, 713 (1976))). The other type of privacy interest applicable to individuals is the "interest in avoiding disclosure of personal matters." *Id.* at 599, 603-04 (recognizing that a statute requiring that the state be provided with a copy of certain drug prescriptions implicated the individual's interest in nondisclosure, but upholding the law because the statute contained adequate security measures); *Nixon v. Adm'r of Gen. Servs.*, 433 U.S. 425, 465 (1977) (assuming that President Nixon had a legitimate expectation of privacy in his private communications, but upholding a federal law that provided for the review and classification of presidential materials by professional archivists).

*Lambert v. Hartman*, 517 F.3d 433, 440 (6th Cir. 2008) (parallel citations omitted). Plaintiff's claim implicates the latter interest, i.e. the "individual's right to control the nature and extent of information released about that individual," which "has been coined an informational right to privacy." *Bloch v. Ribar*, 156 F.3d 673, 683 (6th Cir. 1998).

In *J.P. v. DeSanti*, 653 F.2d 1080 (6th Cir. 1981), the Sixth Circuit reviewed the Supreme Court's opinions regarding the right to privacy, including *Whalen*, *Nixon*, and *Paul v.*

*Davis*, and concluded that "the Constitution does not encompass a general right to nondisclosure of private information." *Id.* at 1087-90. The court declined to "recognize a general constitutional right to have disclosure of private information measured against the need for disclosure," reasoning that "[t]he Framers . . . cannot have intended that the federal courts become involved in an inquiry nearly as broad balancing almost every act of government, both state and federal, against its intrusion on a concept so vague, undefinable, and all-encompassing as individual privacy." *Id.* at 1089-90. Consequently, the Sixth Circuit restricts the constitutional right to informational privacy to "those personal rights that can be deemed 'fundamental' or 'implicit in the concept of ordered liberty.'" *Id.* at 1090 (citations omitted). "Only after a fundamental right is identified should the court proceed to the next step of the analysis-the balancing of the government's interest in disseminating the information against the individual's interest in keeping the information private." *Lambert*, 517 F.3d at 440.[2]

Applying these standards, the Sixth Circuit has repeatedly rejected claims asserting a constitutional right to nondisclosure of personal information. *See, e.g., Lee v. City of Columbus*, 636 F.3d 245, 261 (6th Cir. 2011) (city's requirement that employees returning from sick leave disclose the "nature of [their] illness" to their immediate supervisors does not implicate a fundamental right); *Summe v. Kenton Cnty. Clerk's Office*, 604 F.3d 257, 270–71 (6th Cir. 2010) (county's release of medical record of deputy county clerk to citizen pursuant to open records request

---

[2]In contrast to the Sixth Circuit, some other circuits hold that the disclosure of some kinds of personal information requires the court to balance the government's interests against the individual's interest in avoiding disclosure. *See, e.g., Barry v. New York*, 712 F.2d 1554, 1559 (2d Cir. 1983); *Fraternal Order of Police v. Philadelphia*, 812 F.2d 105, 110 (3d Cir. 1987); *Woodland v. Houston*, 940 F.2d 134, 138 (5th Cir. 1991) (per curiam); *In re Crawford*, 194 F.3d 954, 959 (9th Cir. 1999). The Supreme Court recently contrasted the holding in *DeSanti* with the approach taken in the foregoing opinions; nevertheless, the Court declined to clarify the scope of a constitutional right to informational privacy. *See NASA v. Nelson*, 131 S. Ct. 746, 755-57 & n.9 (2011) (assuming, without deciding, that such a right existed in that case).

did not implicate a right fundamental or implicit in the concept of ordered liberty so as to violate constitutional right to privacy); *Jenkins v. Rock Hill Local Sch. Dist.*, 513 F.3d 580, 591 (6th Cir. 2008) (school's disclosure of information to Children Services not a violation of plaintiff's constitutional rights); *Barber v. Overton*, 496 F.3d 449, 455–57 (6th Cir. 2007) (release of guards' birth dates and social security numbers did not rise to constitutional level); *Coleman v. Martin*, 63 F. App'x 791, 793 (6th Cir. 2003) (dissemination of prisoner's mental health records to parole board was not a constitutional violation); *Jarvis v. Wellman*, 52 F.3d 125, 126 (6th Cir. 1995) (disclosure of rape victim's medical records to an inmate did not violate her constitutional privacy rights); *DeSanti*, 653 F.2d at 1091 (constitutional rights not violated by dissemination of juvenile delinquents' social histories to various state agencies). Indeed, the Sixth Circuit has recognized an "informational-privacy interest of constitutional dimension" in only two instances: (1) where the release of personal information could lead to bodily harm, as in *Kallstrom v. City of Columbus*, 136 F.3d 1055, 1061 (6th Cir. 1998); and (2) where the information released was of a "sexual, personal, and humiliating nature," as in *Bloch*, 156 F.3d at 684. *Lambert*, 517 F.3d at 440; *accord Lee*, 636 F.3d at 260.

In *Lee*, the Sixth Circuit considered a Fourteenth Amendment claim in connection with the disclosure of medical information. *See* 636 F.3d at 260-61. The plaintiff in *Lee* challenged a city's policy requiring its employees to disclose the "nature of [their] illness" to their immediate supervisors after taking sick leave. *Id.* at 261. The court noted that it had "not yet confronted circumstances involving the disclosure of medical records that, in [its] view, are tantamount to the breach of a 'fundamental liberty interest' under the Constitution." *Id.* The court upheld the policy,

reasoning that it did not "implicate the preservation of life and personal security interests recognized in *Kallstrom*, or the interest in shielding sexuality and choices about sex, protected in *Bloch*." *Id.*

In a case similar to the instant one, the Sixth Circuit determined that the disclosure of an inmate's HIV-positive status to prison guards did not violate the inmate's rights under the Fourteenth Amendment. *Doe v. Wigginton*, 21 F.3d 733, 740 (6th Cir. 1994) (holding that the plaintiff's claim "is foreclosed by the letter and reasoning" of *DeSanti*). *But see Moore v. Prevo*, 379 F. App'x 425, 428 (6th Cir. 2010) (distinguishing *Wigginton* and holding that an inmate has a constitutionally-protected interest in avoiding disclosure of his HIV-positive status *to other inmates*, subject to legitimate penological interests).

The logic of *DeSanti*, *Wigginton* and *Lee* forecloses Plaintiff's Fourteenth Amendment claim; in other words, the disclosure alleged by Plaintiff does not implicate a fundamental interest. Plaintiff does not contend that the disclosure subjected him to a risk of physical harm (*Kallstrom*), or involved information of a sexual or intimate nature (*Bloch*). Furthermore, the Court discerns no relevant distinction between the disclosure of an inmate's HIV status to prison guards, which does not implicate a fundamental interest according to *Wigginton*, and the disclosure in Plaintiff's case. Indeed, if the city employee in *Lee* could not claim that disclosure of her health condition to her immediate supervisor implicates a fundamental interest, it stands to reason that a prisoner, who has far fewer privacy interests than a free citizen, cannot claim that disclosure of his health condition to prison officials and other inmates implicates a fundamental interest.

To the extent that *Moore* favors a different result, that decision is neither binding nor persuasive in light of other published Sixth Circuit authority both predating *Moore* (Wiggington),

and post-dating *Moore* (*Lee*). *Moore* does not employ the fundamental-interest analysis set forth in *DeSanti*, *Lambert*, *Bloch*, and *Lee*, nor does it cite any Sixth Circuit opinion in support of its holding. Instead, it expressly adopts the reasoning of the Third Circuit in *Doe v. Delie*, 257 F.3d 309 (3d Cir. 2001). *See Moore*, 379 F. App'x at 427 ("'It is beyond question that information about one's HIV-positive status is information of the most personal kind and that an individual has an interest in protecting against the dissemination of such information.'" (quoting *Delie*, 257 F.3d at 317)). The court in *Delie* recognized, however, that the Sixth Circuit's decisions in *Wigginton* and *DeSanti* conflicted with its own. *Delie*, 257 F.3d at 319 n.7; *see Moore*, 379 F. App'x at 429 (Kethledge, J., dissenting). Even if the Court accepts the statement in *Moore* and *Delie* that a prisoner has "an interest" in protecting against disclosure his HIV status to other inmates, however, it does not necessarily follow that such an interest is one of "constitutional dimension." *See Lambert*, 517 F.3d at 440.

To the extent *Moore* can be construed as *implicitly* holding that the disclosure in that case implicates a fundamental interest, such a holding is difficult to reconcile with *Wigginton*. *Moore* provides no reasoned basis for distinguishing the disclosure of the prisoner's HIV status to inmates in that case, from the disclosure of the same information to prison guards in *Wigginton*, which does not implicate a fundamental interest.

The court in *Moore* justifies its decision, in part, on a desire to avoid a circuit split over the precise issue of an inmate's right to avoid disclosure of his HIV status, *see Moore*, 379 F. App'x at 427 n.4, but that rationale is not persuasive because *DeSanti* had already established a more significant split regarding the proper scope and analysis of informational privacy rights. *See DeSanti*, 653 F.2d at 1088 (contrasting the Third Circuit's balancing standard with the Sixth

Circuit's fundamental-interest approach). Thus, for all of the foregoing reasons, *Moore* is not persuasive and the Court declines to apply it here, choosing instead to apply the published Sixth Circuit authority in *DeSanti*, *Wiggington* and *Lee*.

In accordance with *DeSanti*, *Wigginton* and *Lee*, therefore, Plaintiff does not state a Fourteenth Amendment claim because the disclosure of his health and/or HIV status to prison officials and other inmates does not implicate a fundamental interest protected by the right to privacy under the Fourteenth Amendment.

    II.    <u>Immunity</u>

One of the Defendants sued by Plaintiff is the Michigan Department of Corrections. Even if Plaintiff stated a claim, he may not maintain a § 1983 action against the MDOC. Regardless of the form of relief requested, the states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98-101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1993). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). In numerous unpublished opinions, the Sixth Circuit has specifically held that the MDOC is absolutely immune from suit under the Eleventh Amendment. *See*, *e.g.*, *McCoy v. Michigan*, 369 F. App'x 646, 653-54 (6th Cir. 2010); *Turnboe v. Stegall*, No. 00-1182, 2000 WL1679478, at *2 (6th Cir. Nov. 1, 2000). In addition, the State of Michigan (acting through the Michigan Department of Corrections) is not a "person" who may be sued under § 1983 for money

damages. *See Lapides v. Bd. of Regents*, 535 U.S. 613 (2002) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58 (1989)). Therefore, the MDOC is subject to dismissal for the additional reason that it is immune from suit.

## **Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's claim must be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $455.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $455.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.

Dated: June 18, 2012              /s/ Robert J. Jonker
                                  ROBERT J. JONKER
                                  UNITED STATES DISTRICT JUDGE